UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONATHAN MARK RUIZ,

    Plaintiff,

v.                                                     CASE NO: 8:07-cv-1233-T-26EAJ

THE TOWN OF INDIAN SHORES, FLORIDA,
et al.,

    Defendants.
_____/

**O R D E R**

Before the Court are the following cross motions for summary judgment and materials supporting and opposing same: (1) Plaintiff's Motion for Summary Judgment, Statement of Undisputed Facts and exhibits (Dkts. 107, 105 & 106), Defendant Town of Indian Shores' Response (Dkt. 118), and Defendant John P. Wiseman's Memorandum in Opposition and Statement of Disputed Facts (Dkts. 121 & 122); (2) Defendant Town of Indian Shores' Motion for Summary Judgment (Dkt. 99), and Plaintiff's Consolidated Response in Opposition with Statement of Disputed Facts (Dkts. 123 & 124); (3) Defendant Sheriff Jim Coates' Motion for Summary Judgment and exhibits (Dkts. 100 & 101-104), and the consolidated response (Dkts. 123 & 124); and (4) Defendant John P. Wiseman's Motion for Summary Judgment and exhibits (Dkts. 79, 82, 83 & 85-98), and the consolidated response. (Dkts. 123 & 124). After careful consideration of the

submissions of the parties, the applicable law, and the entire file, the Court concludes that all of the motions should be denied with the exception that the Pinellas County Sheriff's motion should be granted.

**PERTINENT FACTS**

The gist of this action seeks relief for the alleged false arrest, excessive force, and battery associated with an incident on a public beach in Indian Shores on Sunday, March 12, 2006, at around 4:00 a.m. The Third Amended Complaint alleges two claims for relief: (1) count I against Officer Wiseman in his individual capacity for violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 for an unreasonable search and seizure, arrest, and excessive force; and (2) count II against the Sheriff of Pinellas County, Jim Coates, in his official capacity and against the Town of Indian Shores for battery and false arrest pursuant to section 768.28 of the Florida Statutes. The following facts are found in the deposition testimony of Officer Wiseman of the Town of Indian Shores' Police Department.

Prior to the arrest, a resident of a condominium nearby called the police to complain about the loud noise, which reportedly sounded like a female screaming, on the beach. (Dkt. 105, pp. 10-12 & 14-15). Plaintiff and four friends[1] were on the beach. (Dkt. 105, pp. 20). First, Officer Wiseman observed the group from his patrol car as he

---

[1] Philip Caldwell, a friend of Plaintiff's since seventh grade (Dkt. 87, p. 8); Benjamin Wright, a friend of Plaintiff's since second grade (Dkt. 86, pp. 11-12); Tiffany Citek, whose friend used to be Plaintiff's boyfriend (Dkt. 93, p. 10); and John Hornbeck, Plaintiff's friend since fifth grade. (Dkt. 84, pp. 10-12).

paralleled the beach, and he observed them screaming, shouting, and "causing a ruckus." (Dkt. 105, p. 25). After Officer Wiseman parked his car, he approached the group on foot and shined his flashlight on them. (Dkt. 105, pp. 21). He advised them of the noise ordinance violation and asked for identification. (Dkt. 105, pp. 30-31 & 34). Plaintiff produced a marine corps identification card. (Dkt. 105, pp. 34-35). Officer Wiseman noted the smell of alcohol emanating from Plaintiff, his watery, bloodshot eyes, and the red plastic drinking cup he was holding. (Dkt. 105, pp. 43-44).

Also at this time, one of the males, Wright, was urinating in the Gulf of Mexico. (Dkt. 105, pp. 35-36).[2] As Officer Wiseman was trying to confront that male, Plaintiff kept tapping Officer Wiseman's left shoulder and chest area with the half full drinking cup. (Dkt. 105, pp. 43, 55). The odor of alcohol, specifically rum and fruit punch, was obvious. (Dkt. 105, p. 44). Officer Wiseman told Plaintiff that he was violating the ordinance against open containers of alcohol on the beach and that he would be cited. (Dkt. 105, pp. 44-45). Officer Wiseman took the cup away from Plaintiff and discarded it. (Dkt. 105, p. 49). At this point, Plaintiff began walking away and the group was following him. (Dkt. 105, pp. 48-49). Officer Wiseman directed the group to his cruiser parked in a lot behind a condominium on the beach. (Dkt. 105, pp. 17 & 46). While they were walking to the parking lot, Plaintiff kept yelling, "Where are we going? . . .No,

---

[2] Officer Wiseman cited this individual for public urination. (Dkt. 105, p. 36).

we're not going this way. . . This is bullshit . . . Let's go then, step it out." (Dkt. 105, p. 78).[3]

Officer Wiseman called for back-up either before or as he was taking the group to his patrol car. (Dkt. 105, p. 74). At the patrol car, Officer Wiseman first asked the female, Citek, to get in the back of the patrol car. (Dkt. 105, p. 70). It was about this time that Deputy Whitesell came on the scene. (Dkt. 105, p. 83). Officer Wiseman next asked Plaintiff's friend, Wright, to get into the back of the car to issue him a citation for urinating in public. (Dkt. 105, p. 73). Finally, Officer Wiseman verbally directed Plaintiff to sit in the backseat of the patrol car so that he could issue him a citation for violating the open container ordinance and charge him with disorderly intoxication. (Dkt. 105, p. 83 & 87-88). Plaintiff questioned why he was now being additionally charged with disorderly intoxication. (Dkt. 105, pp. 87-88). Plaintiff then said, "No . . . I'm not getting in the police car." (Dkt. 105, p. 89). Officer Wiseman told him to get in the car and Plaintiff responded, "I'm not getting in the f—ing back seat." (Dkt. 105, p. 89). Plaintiff then began to leave. (Dkt. 105, pp. 89 & 92).

At that point, Officer Wiseman grabbed Plaintiff's left wrist with his left hand, and a sort of "tug-of-war" ensured. (Dkt. 105, pp. 94-95). Plaintiff's arm was straight and somewhat behind him as he was pulling away. (Dkt. 105, p. 102). Officer Wiseman was being pulled off balance, so he then placed his right hand to Plaintiff's left shoulder to try

---

[3] Officer Wiseman, also a marine, testified that "step it out" is marine corps terminology used by instructors in drills. (Dkt. 105, p. 78).

to get Plaintiff to turn to the left. (Dkt. 105, pp. 96-99). Officer Wiseman then took him down to the ground in a "textbook style take-down." (Dkt. 105, p. 103). Plaintiff became limp at some point during the take-down—"dead weight." (Dkt. 105, pp. 107-110 & 117). Officer Wiseman's intention was to take him down to his knees with the one free hand catching his fall, but Plaintiff just fell on his face. (Dkt. 105, pp. 124). Of the fifteen to twenty times Officer Wiseman had employed this technique, Plaintiff was the first to fall on his face. (Dkt. 105, p. 127). Officer Wiseman placed Plaintiff in handcuffs before he realized that Plaintiff was non-responsive. (Dkt. 105, p. 128). Plaintiff was charged with resisting arrest without violence because he refused to get in the backseat of the patrol car. (Dkt. 105, p. 130).

  The affidavit of dispatch reveals that a noise complaint was received around 4:30 a.m. (Dkt. 103). About nine minutes later, the radio operator transmitted to Deputy Whitesell of the Pinellas County Sheriff's Office that Officer Wiseman was with six intoxicated individuals.[4] At 4:45 a.m., Deputy Whitesell was dispatched to the scene as back up for Officer Wiseman. When Deputy Whitesell arrived, Plaintiff and the others were at Officer Wiseman's patrol car in the parking lot of the condominium.

  The following facts are revealed through the affidavit of Deputy Whitesell. (Dkt. 101). He avers that upon arriving at the scene, he heard Officer Wiseman tell Plaintiff

---

[4] While the number of individuals on the beach may have initially been more than five, including Plaintiff, when the complaint was made, at the time Deputy Whitesell arrived on the scene, there were five all total.

that he was under arrest. Officer Wiseman used force in taking Plaintiff to the ground. He saw blood pool on the ground around Plaintiff's head shortly after he hit the ground. Plaintiff's friends were upset and angry. The paramedics were called, but Deputy Whitesell saw that although the Plaintiff was not moving, he was breathing. Before the paramedics arrived, Plaintiff attempted to get up off the ground. This is the time at which Deputy Whitesell placed his left foot on Plaintiff's upper back and shoulder area for several seconds to hold him down. Plaintiff stopped moving, and he removed his foot. He used only light pressure when he placed his foot on Plaintiff. He had no gloves. In keeping with the Pinellas County Sheriff's Office general orders, Deputy Whitesell did not touch Plaintiff with his hands because of the blood and the risk of contamination from the blood.

Plaintiff testified that he has no memory of Deputy Whitesell placing his foot on his back. (Dkt. 85, p. 73).[5] Of the four friends, only John Hornbeck recalled seeing Deputy Whitesell place his foot on Plaintiff's back. (Dkt. 84, p. 75; Dkt. 87, p. 73; Dkt. 86, p. 86; Dkt. 93, p. 37). John Hornbeck testified, contrary to Deputy Whitesell, that Plaintiff was unconscious and not moving when he placed his foot on his back. (Dkt. 84, pp. 75 & 100-101). John Hornbeck testified that Deputy Whitesell left his foot on Plaintiff's back a couple of minutes, but he could not tell if Deputy Whitesell was applying pressure. (Dkt. 84, p. 101).

---

[5] Plaintiff has no recollection because he was either unconscious from the fall or from alcohol, and he relies on an eye witness account to substantiate this gesture.

Plaintiff had ingested four or five beers and a shot earlier that evening. (Dkt. 85, p. 45; Dkt. 84, p. 29; Dkt. 86, p. 26).[6] John Hornbeck testified that he drank three or four beers that evening. (Dkt. 84, pp 26 & 28-29). Philip Caldwell testified that he drank two bottled beers. (Dkt. 87, p. 13). Benjamin Wright testified that he drank two or three beers that night, that they shared a pitcher of beer, and that some took shots of tequila at the condominium. (Dkt. 86, pp. 21-23 & 26). Tiffany Citek testified that she drank fewer than three shots of tequila that evening. (Dkt. 93, pp. 51-52).

Plaintiff did not remember too much about the particulars of the evening. Wright testified that he saw Officer Wiseman take Plaintiff down to ground and described it as "fast and violent." (Dkt. 86, p. 60). He saw Officer Wiseman's hands on Plaintiff's upper body and saw him use his leg "to kind of take [Plaintiff's] legs out, and just slammed him, a face slam, if you will." (Dkt. 86, p. 61). Caldwell testified that he "never saw [Plaintiff] pull away." (Dkt. 87, p. 52). Caldwell said that he turned around and saw Officer Wiseman to the side of Plaintiff, holding his arm behind his back, and Plaintiff was heading down toward the pavement face first. (Dkt. 87, p. 55). He said that Plaintiff had no time to place his hands in front of him. (Dkt. 87, p. 55). He saw him handcuff Plaintiff after he hit the ground. (Dkt. 87, p. 61 & 73). Hornbeck testified that when Plaintiff asked Officer Wiseman what was going on, he suddenly took him down to the ground. (Dkt. 98, p. 59). He described the take-down as Officer Wiseman placing his

---

[6] Each person's testimony with regard to how much everyone else drank is inconsistent, but the amounts are set forth here as background.

right foot in front of Plaintiff and one hand behind Plaintiff's shoulders and the other in front. (Dkt. 98, pp. 68-70). He stated that "[t]here was force behind the fall." (Dkt. 98, p. 72). Citek testified that she heard but did not see Plaintiff hit the ground. (Dkt. 93, pp. 27-28).

Plaintiff contends that when he hit the ground, he lost consciousness[7] and three teeth, and he suffered a broken a nose, deep lacerations to his face, lip, and eyebrow, and profuse bleeding. (Dkt. 85, pp. 71-75, 80-86). At some point in the take-down and handcuffing, Plaintiff suffered a rupture of the ulnar ligament of his right wrist and thumb, leaving his right arm, hand, and wrist limp. The evidence regarding his injuries, which will not be set forth in detail for purposes of this summary judgment, reveal that he suffered what he alleged. He missed two weeks of work. (Dkt. 85, p. 91).

Plaintiff was transported to Bayfront Medical Center at 5:46 a.m. where Nurse Carpenter testified that Plaintiff had a strong odor of alcoholic beverage upon his arrival. (Dkt. 92, p. 11). Plaintiff was discharged to Officer Wiseman at 7:45 a.m., at which time Plaintiff was taken to jail. Upon arrival at the jail, Plaintiff was booked on resisting arrest without violence, disorderly intoxication, and possession of an open container. Plaintiff was released on bail later that morning. All three charges were eventually nolle-prossed.

---

[7] Officer Wiseman described it as passing out as a result of Plaintiff's inebriation. He attributed Plaintiff's injuries to his falling to the ground as a result of his drunken condition.

No tests for alcohol consumption were administered, and no alcohol was retrieved from the scene. As a consequence of the incident, Plaintiff underwent three root canals and surgery for his right ulnar ligament rupture. Plaintiff suffers permanent injury to his right hand and thumb. These facts and all opposing submissions will be considered in conjunction with each motion in the light most favorable to the non-moving parties.

## PLAINTIFF'S MOTION

Plaintiff seeks summary judgment against two of the Defendants: the Town of Indian Shores, Florida (Indian Shores) and Officer Wiseman, individually as the arresting officer.[8] Plaintiff asserts there is no genuine issue of material fact on the false arrest and excessive force Fourth Amendment and common law claims of false arrest and battery, relying on Davis v. Williams, 451 F.3d 759 (11th Cir. 2006). He argues the absence of probable cause for the common law claims, and the absence of arguable probable cause for the Fourth Amendment claims, in that Officer Wiseman did not observe all of the elements of a violation of the open container ordinance because the precise alcoholic content of the fruit punch beverage is an element of the crime. He contends that this element can never be proven because Officer Wiseman discarded the only evidence, the contents of the red plastic cup. He asserts that there is no proof that Plaintiff was drunk, or even drinking on the beach for that matter, and hence could not have been arrested for either disorderly intoxication or a violation of the open container ordinance.

---

[8] Plaintiff did not seek summary judgment against Defendant Deputy Whitesell.

With respect to disorderly intoxication, Plaintiff argues that he did not cause a "public disturbance," citing Barry v. State, 433 So.2d 611 (Fla.Dist.Ct.App. 1983), Miller v. State, 780 So.2d 197 (Fla.Dist.Ct.App. 2001), and Blake v. State, 433 So.2d 611 (Fla.Dist.Ct.App. 1983). In Barry, a conviction based on the defendant's yelling obscenities at a police office was reversed. In Miller, a conviction based on the defendant's loud and aggressive speech toward law enforcement officers was overturned because the defendant did not become physical until the officer initiated the arrest and the words used were not "fighting words" or false words creating a clear and present danger of harm to others. In Blake, a conviction for disorderly intoxication was reversed because the defendant's talking loudly, using profanity, and flapping his arms did not support the requisite conduct necessary to violate the statute.

The purpose behind the disorderly intoxication statute is "to protect the health, safety and welfare of the public in general." State v. Holden, 299 So.2d 8 (Fla. 1974). The officer must reasonably believe that the public safety is endangered or that the defendant is creating a disturbance. See T.L.M. v. State, 371 So.2d 688 (Fla.Dist.Ct.App. 1979). Because the crime is a misdemeanor, it must be committed within the officer's presence. Kirby v. State, 217 So.2d 619 (Fla.Dist.Ct.App. 1969). Thus, it is necessary that the officer observe the violation. See Horsley v. State, 734 So.2d 525 (Fla.Dist.Ct.App. 1999) (holding that because the officers saw only an open, Colt 45 malt liquor bottle ten feet away from the defendant, and neither observed him carrying it, probable cause for arrest of violation of a municipal open container law did not exist).

Considering the facts in the light most favorable to Officer Wiseman and Indian Shores, Officer Wiseman viewed physical manifestations of Plaintiff's drunkenness such as bloodshot eyes and the odor of alcohol, as well as observations of Plaintiff carrying a red cup smelling of a fruity alcoholic beverage.[9] Officer Wiseman saw the female's clothes torn and before he was dispatched to the beach, he had received a call that a woman was screaming. Plaintiff was loud and taking control of the group, and finally, when Officer Wiseman directed him to step into the car, he refused and began to leave. Under these circumstances, an officer could reasonably believe that Plaintiff's actions were endangering members of the group. It therefore follows that a reasonable officer could conclude that the arrest was lawful and Plaintiff was resisting arrest without violence when he refused to enter the car and walked away from Officer Wiseman.

In addressing these issues, with respect to the Fourth Amendment showing, only "arguable probable cause," and not probable cause, is necessary for a law enforcement officer to avoid summary judgment. "Arguable probable cause" exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff. Davis, 451 F.3d at 762-63. To prove a Fourth Amendment false arrest claim under § 1983, the plaintiff has the burden of demonstrating the absence of probable cause. Rankin v. Evans, 133 F.3d

---

[9] As Plaintiff admits in his own motion, Officer Wiseman "observed Ruiz in possession of a red plastic cup that . . . emitted an odor of both fruit punch *and alcohol*." See docket 107, p. 7.

1425, 1436 (11th Cir. 1998). Whereas, on the state claim for false arrest, the defendant bears the burden of demonstrating the existence of probable cause as an affirmative defense. Rankin, 133 F.3d at 1436. For the three offenses for which Plaintiff was arrested, public consumption of alcohol, disorderly intoxication, and resisting arrest without violence, the evidence taken in the light most favorable to Officer Wiseman and Indian Shores, could substantiate the existence of both arguable probable cause (for the Fourth Amendment claim) and probable cause for the state claim.

Having just determined that the record supports, taken in the light most favorable to Indian Shores and Officer Wiseman, a finding of arguable probable cause, this Court further finds that summary judgment based on probable cause on the excessive force and battery claims is also denied. As discussed below, the issues involving whether these facts support a finding of the use of excessive force and battery caused by any excessive force must be decided on the witnesses' credibility and is therefore left for the finder of fact.

**OFFICER WISEMAN'S MOTION**

Officer Wiseman seeks the protection of qualified immunity on the Fourth Amendment claim for excessive force. Assuming probable cause for the arrest existed, Plaintiff counters that the force used was unconstitutional. Following the proper order of analysis to reach the question of qualified immunity, see McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007), the plaintiff must first establish that the defendant's conduct violated a constitutional right, and if there is such a right, that the violation of which was

-12-

"clearly established" at the time of the violation. The use of excessive force in conducting an arrest constitutes a violation of a clearly established law. Davis, 451 F.3d at 767.

The test for use of excessive force in a situation that does not involve the Eighth Amendment[10] as here, focuses on what a reasonable officer's perspective would have been at the scene as opposed to applying hindsight vision. Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000); Coffin v. Steube, No. 8:04-cv-2669-T-26EAJ, 2006 WL 1169696 (M.D. Fla. May 3, 2006). Several factors must be considered: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Priester, 208 F.3d at 924. The Court must further look at the totality of the circumstances to evaluate whether the manner of the arrest was reasonable, such as the need and amount of force, the relationship between the need and the amount, and the extent of the injuries. Draper v. Reynolds, 369 F.3d, 1270, 1277-78 (11th Cir. 2004).

The issue in this case is the amount of force used—whether the force could be considered only *de minimus* and therefore bestowing qualified immunity on Officer Wiseman or whether the injuries were great enough to prevent a finding on summary

---

[10] See Hudson v. McMillan, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1991), and Rogers v. Judd, No. 8:07-cv-1705-T-26EAJ, 2009 WL 129631 (M.D. Fla. Jan. 20, 2009), for cases involving the assertion of Eighth Amendment rights for inmates.

judgment that the force used may not have been necessary in the execution of the arrest. In this case, the alleged excessive force was used before Officer Wiseman handcuffed Plaintiff. Qualified immunity is much more likely to be granted when the arrestee has not yet been handcuffed and the officer is attempting to use the requisite force to secure the suspect. See Davis; Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002) (holding that qualified immunity should not be granted to officer who exerted force *after* plaintiff was handcuffed and secure). Nevertheless, at this juncture, the Court finds that the evidence taken in the light most favorable to Plaintiff, leaves a genuine issue of material fact with respect to whether the force was absolutely necessary given the severity of the crime and whether Plaintiff was trying to evade the officer.

**INDIAN SHORES' MOTION**

Indian Shores seeks summary judgment on the state common law claims of battery and false arrest. Based on the analysis of qualified immunity and the similar standard with respect to excessive force used in state law battery claims, the Court finds that the common law battery claim allegedly committed by Officer Wiseman must stand in view of the genuine issue of material fact with respect to whether excessive force was used. Davis, 451 F.3d at 768, citing City of Miami v. Sanders, 672 So.2d 46, 47 (Fla.Dist.Ct.App. 1996). As to the false arrest claim, the Court also finds a genuine issue of material fact sufficient to avoid summary judgment.

## SHERIFF'S MOTION

On the sole claim of battery against the Sheriff, he argues that Plaintiff was unconscious and therefore the touching was not offensive and did not constitute a battery when Deputy Whitesell placed his foot on Plaintiff's back. Paul v. Holbrook, 696 So.2d 1311, 1312 (Fla.Dist.Ct.App. 1997) (holding that a civil battery is the infliction of a harmful or offensive contact upon another with intent to commit such contact). Plaintiff seeks damages only for humiliation and therefore concedes that the battery was not physically harmful. To determine whether an officer's placing his foot on a handcuffed arrestee's back to hold him down intrudes upon Plaintiff's dignity, the Court looks to the context in which the touching occurred.

At the time Deputy Whitesell appeared on the scene, he saw Officer Wiseman arrest Plaintiff by taking him down and handcuffing him. He did not know the charges upon which Plaintiff was being arrested. He observed four angry individuals watching, although the radio transmitted that six individuals were at the scene, leaving two unaccounted for. He also observed a significant pool of blood on the cement around Plaintiff's head. Even assuming Hornbeck's testimony that Plaintiff had not moved when Deputy Whitesell placed his foot on his back as true, Deputy Whitesell's action merely assured that Plaintiff would remain still until the emergency medical team arrived and did not expose himself to possibly contaminated blood. Moreover, he needed to remain upright to monitor the movements of the four, and possibly five, other individuals who

appeared angry. Thus, the touching served to uphold medical protocol, for both Plaintiff and the deputy, and to insure officer safety by permitting the deputy to remain alert with respect to the other suspects.

That Plaintiff suffered any humiliation after-the-fact, assuming he was unconscious at the time Deputy Whitesell placed his foot on Plaintiff as both Hornbeck and Plaintiff testified, is not borne out by this record. Plaintiff himself has no memory of a foot being placed on his back. As noted by the Sheriff, Plaintiff was subject to far more intrusive touching in the context of an arrest and possible pat-down for weapons. Law enforcement officers may use some force to maintain custody of the arrestee. See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003). Moreover, when a claim for excessive force is brought as a battery claim against a law enforcement officer, tort law "should not be involved in second-guessing fundamental law enforcement policies." City of Miami v. Sanders, 672 So.2d 46, 48 (Fla.Dist.Ct.App. 1996). Based on this record, the force used by Deputy Whitesell in placing his foot on Plaintiff's back was *de minimus*, at best, and there is no indication whatsoever from any witness that Deputy Whitesell intended his action as offensive or harmful, but was merely standard procedure for the circumstances at hand.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Dkt. 107) is **DENIED.**

(2) Defendant Town of Indian Shores' Motion for Summary Judgment (Dkt. 99) is **DENIED**.

(3) Defendant John P. Wiseman's Motion for Summary Judgment (Dkt. 79) is

**DENIED**.

(4) Defendant Sheriff Jim Coates' Motion for Summary Judgment (Dkt. 100) is

**GRANTED**.

(5) This case shall proceed to trial on all claims except the claims against the Sheriff. Final judgment shall not be entered until the remaining claims are resolved.

**DONE AND ORDERED** at Tampa, Florida, on September 21, 2009.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record